## LEHIGH & WILKES BARRE COAL CO. v. UNITED STATES.

### No. 2204.

District Court, M. D. Pennsylvania.
March 3, 1930.

Hause, Evans & Baker, of Harrisburg, Pa., and White & Case, of New York City (Hines, Rearick, Dorr, Travis & Marshall, of New York City, of counsel), for petitioner.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., and A. A. Vosburg, Asst. U. S. Atty., of Scranton, Pa. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Wright Matthews, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

JOHNSON, District Judge.

This is an action to recover federal income and profits tax paid by the petitioner for the year 1919. The original petition, filed December 13, 1928, was amended and the amended petition was filed March 15, 1929, with the consent of counsel for the defendant. On May 27, 1929, an affidavit of defense was filed raising questions of law.

The petitioner, a Pennsylvania corporation, and its subsidiaries, Lehigh & Luzerne Coal Company, Lehigh & Wilkes Barre Coal Company of New Jersey, Lehigh & Wilkes Barre Coal Company of Massachusetts, and Honeybrook Water Company, duly filed a consolidated federal income and profits tax return on form 1120, for the calendar year 1919, and paid for said year a total net tax of $1,128,746.57, computed upon the basis of the affiliation of the petitioner with its above-mentioned subsidiaries.

During the year 1919, practically the entire issued stock of the petitioner was owned directly by the Central Railroad of New Jersey, a New Jersey corporation, hereinafter called the railroad company, which fact was disclosed by the said railroad company in its affiliated corporations questionnaire filed by the said railroad company with its federal income and profits Tax Return for the year 1919.

On or about July 14, 1921, the Commissioner of Internal Revenue ruled that the petitioner was not affiliated with the said the Central Railroad Company of New Jersey, within the purview of section 240 of the Revenue Act of 1918 (40 Stat. 1081), and the petitioner was so advised by the Commissioner of Internal Revenue. The Commissioner of Internal Revenue did not complete his audit of the income and profits tax returns of the petitioner or of the railroad company for 1919, before the five-year statute of limitations ran on the filing of claims for refund of taxes paid for 1919. Because of this fact, before the expiration of the period of limitation on such claims for refund, neither the petitioner nor the railroad company was able to determine what adjustments might be made by the Commissioner in the taxable income and invested capital shown on their respective returns when these returns should be audited.

On account of this unsettled condition of its 1919 tax liability, the petitioner, therefore, within a few weeks of the expiration of the statutory period of limitation for filing claims for refund of 1919 taxes, filed with the collector of internal revenue its original claim for refund, giving as the grounds for said claim: "The claim herewith presented is for the purpose of protecting the rights and interests of this taxpayer, as provided in section 252 of the Revenue Act of 1921 [42 Stat. 268]."

After the original claims of the petitioner had been filed and after the statute

of limitations had run on filing claims for refund for 1919 taxes, the Commissioner of Internal Revenue, in the course of his audits of the above-mentioned returns of the petitioner and of the railroad company, determined for the first time that the petitioner and its above-mentioned subsidiaries were affiliated with the railroad company and its subsidiaries, thereby reversing his prior ruling of July 14, 1921, to the effect that the petitioner was not affiliated with the railroad company.

As a result of such determination by the Commissioner, and within a short time after the petitioner was so advised, the petitioner amended its original refund claim by specifically setting forth as a ground for refund the fact of its affiliation with the railroad company.

Although the amendments to the original claims above mentioned were made after the statute of limitations had run on filing claims for refund for 1919, these amendments were made June 25, 1926, before the Commissioner had taken any action on the original claims. Since the filing of the respective amending claims, the Commissioner has rejected the petitioner's claim, as amended, and, although the Commissioner has admitted that the petitioner, by reason of affiliation with the railroad company, has largely overpaid its tax for 1919, he has taken the position in his affidavit of defense, raising questions of law, that refund of such taxes is barred by the statute of limitations.

The question therefore raised by the affidavit of defense raising questions of law is whether the claim for refund filed February 10, 1925, was sufficient to toll the statute of limitations and to allow the amendment of June 25, 1926. Under the law, a claim for refund must be filed before the expiration of five years after the date the return was due, March 15, 1920.

Section 281(f) of the Revenue Act of 1924 (26 USCA § 1065 note) provides: "This section shall not (1) bar from allowance a claim for credit or refund filed prior to the enactment of this Act which but for such enactment would have been allowable, or (2) bar from allowance a claim in respect of a tax for the taxable year 1919 or 1920 if such claim is filed before the expiration of five years after the date the return was due."

Section 1014 (a) of said act (43 Stat. 343, 26 USCA § 156) provides for the recovery of erroneously collected taxes, as follows:

"Sec. 1014 (a) Section 3226 of the Revised Statutes, as amended, is amended to read as follows:

"'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.'"

Article 1306 of Regulations 65 provides as follows: "Art. 1306. *Claims for Refund of Taxes Erroneously Collected.*—Claims by the taxpayer for the refunding of taxes, interest, penalties and additions to tax erroneously or illegally collected shall be made on form 843. All facts relied upon in support of the claim should be clearly set forth under oath. In the case of the taxpayer's death, certified copies of the letters of administration or letters testamentary or other similar evidence must be annexed to the claim to show the authority of the administrator or executor. The affidavit may be made by the agent of the person assessed, but in such case a power of attorney must accompany the claim. Checks in payment of claims allowed will be drawn in the names of the persons entitled to the money and will be sent directly to the proper persons. The Commissioner has no authority to refund on equitable grounds penalties legally collected. As to claims for refund of sums recovered by suit, see article 1353."

The objection to the form of petitioner's claim as filed February 10, 1925, is that the claim did not specify the ground for the

'refund of taxes paid. The answer to this objection is that it was impossible for the petitioner to specify the ground for the refund, for the reason that the petitioner's return had not yet been audited, and the petitioner was unable to state at the time the specific ground for its claim for the refund on February 10, 1925, or within the period of the statute of limitations. The law does not compel a person to do an impossible thing, and here the thing was impossible, not because of any act of the petitioner, but because of the failure of the Commissioner to audit the petitioner's return within the period of the statute of limitations. Furthermore, the Commissioner of Internal Revenue made no objection to the form of petitioner's claim filed February 10, 1925; this the court considers important in this case.

Regardless of any defect of form or sufficiency in the original claim for refund, the delay of the Commissioner of Internal Revenue to audit the petitioner's return within the period of the statute of limitations, and the impossibility on the part of the petitioner to file a more specific claim within the period of the statute of limitations, and the fact that no objection was made to the form of the petitioner's original claim for refund, which amounts to a waiver of any irregularity, and the subsequent amendment, specifying the grounds of petitioner's claim for a refund prior to the final rejection, made the claim effective. Zeller et al. v. United States (D. C.) 35 F.(2d) 870; Art Metal Construction Co. v. United States (D. C.) 35 F.(2d) 379; Philip Wunderle v. McCaughn, United States District Court, Eastern District of Pennsylvania, 38 F.(2d) 258; Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253.

And now, March 3, 1930, the affidavit of defense raising questions of law is overruled, and the defendant is directed to file his answer to the averments of fact in the petition within fifteen days from the filing of this opinion.